LEON COOPER et al., Appellants, *v.* MUNDIAL TRADING
Co., INC., Respondent.

(Supreme Court, Appellate Term, First Department, November,
1918.)

Contracts — inability to procure export license no defense in action to
recover purchase price.

> Where at the time defendant gave plaintiffs an order for a
> quantity of chlorate of potash with directions that it should
> be properly packed for export, defendant knew that under fed-
> eral war regulations chlorate of potash could not be exported
> except under a license duly granted by government officials,
> defendant's inability to procure such a license is no defense
> in an action to recover the purchase price of the goods, which,
> having ordered, it was at liberty to dispose of anywhere.

APPEAL from a judgment of the Municipal Court of
the city of New York, borough of Manhattan, first
district, in favor of the defendant, entered upon the
verdict of a jury directed by the court.

David R. Bernstein, for appellants.

William S. Bennet (Aaron William Levy, of coun-
sel), for respondent.

MULLAN, J.   The essential facts are not in dispute,
and it was conceded upon the trial that if the defense,
based upon the defendant's inability to procure an
export shipping license, was not good, the plaintiffs
would be entitled to recover the sum of $235.20.

The plaintiffs agreed to sell, and the defendant to
purchase, a quantity of chlorate of potash, to be deliv-
ered f. o. b. steamer (undesignated), New York. The
order contained the following: "Packing: Proper for
export;" and " Marks: F. A. S. S., M. T. C., No. 1944,
Barranquila," and " Hold for shipping instructions."

The defendant refused to take the goods, for the reason that it was unable to procure an export shipping license. It attempted to prove, and we shall assume it did prove, that under federal war regulations chlorate of potash could not be exported except under license granted by the government officials clothed with responsibility in the matter; and that defendant was unable to procure such a license. It is admitted that the defendant knew, when it gave the order, that such a license had to be obtained.

We think the defense presented is unavailable. The defendant had ordered goods which it was at perfect liberty to dispose of anywhere. Doubtless it intended to ship the potash to Barranquila, Colombia, as its officer testified, and as the " marks " and packing requirements in the order seem to indicate; and we shall even assume that the plaintiffs knew, from these indications, of the defendant's intention, but where does that bring us? The plaintiffs, who, we shall assume, knew of the conditions obtaining in the matter of procuring licenses for the exportation of potash, would not have been justified in refusing to ship. The risk of not being able to procure a license was wholly the defendant's. Presumably the gain in contemplation was sufficient to make it a wise business venture for the defendant to gamble upon the chance of procuring the license; but, however that may be, the element of chance cannot be foisted upon the plaintiffs. Furthermore, there was nothing to compel the defendant to ship to a port to which the government would not allow the goods to be sent. Suppose, for example, the defendant had an opportunity to sell the goods to an American buyer, or to a foreign buyer at a port for shipment to which a license was obtainable. Could the plaintiffs refuse to deliver to the defendant? The question answers itself, and it would seem to be

unnecessary to cite the many authorities holding that a man may not be excused from performance of a contract in which he has failed to make suitable provision for relief in the event of the occurrence of contingencies like that dealt with here.  The defendant, however, lays great strees upon a recent ruling of the English Court of Appeal in *Anglo-Russian Merchant Traders, Limited,* v. *John Batt & Co., Limited,* 2 K. B. Div. 1917, 679.  There the vendor engaged itself to ship aluminium by steamer to Vladivostok, Russia, at a time when, to the knowledge of both vendor and vendee, there was a governmental prohibition against the export of aluminium except under license granted by the government.  The vendor was refused the shipping license, and the vendee sued for damages.  Lord Reading, C. J., Lord Cozens-Hardy, M. R., and Scrutton, L. J., agreed that an action did not lie.  The chief justice said:  " The question is, what is the obligation of the sellers under the contract?  It is admitted by both parties that some obligation must be implied in the contract.  In my opinion the implied obligation is no higher than that the sellers shall use their best endeavours to obtain a permit.  That is a term which is necessary to give to the contract such business efficacy as both parties must have intended, when they entered into the contract, that it should have, within the principle laid down by Bowen, L. J., in *The Moorcock* (14 P. D. 68).  That statement of the principle has not been affected by any subsequent case, and it has always been accepted as correct.  The difficulty lies in the application of the principle to the particular case.

" The buyers contend that the implied obligation is that the sellers will obtain a license to ship, and that if they do not they will pay damages.  That is to say, that the obligation to ship is absolute.  In my opinion, if it were an absolute obligation, it would be contrary to

the law of England which governs this case. There was at the time of making the contract, and at all material times, a prohibition against the export of aluminium except under a license. If a license cannot be obtained aluminium cannot be shipped, and I cannot see why the law should imply an absolute obligation to do that which the law forbids. A shipment contrary to the prohibition would be illegal, and an absolute obligation to ship could not be enforced. I cannot agree that, in order to give to the contract its business efficacy, it is a necessary implication that the sellers undertook an absolute obligation to ship whether a license was or was not obtained. A party to a contract may warrant that he will obtain a license, but no such term can be implied in this case. The reasonable view of the contract, in my opinion, having regard to the statement in *The Moorcock (supra)*, is that the sellers sold subject to their being able to ship under a license, and that they impliedly undertook to use their best endeavours to obtain a license. The umpire has found that they used their best endeavours, the failure to ship being due to their inability to obtain a license, and therefore there has been no breach of contract.''

The distinction between that case and this is clear. There the vendor could not ship to Vladivostok, that is to say, it could not discharge its contractual obligation, without violating the law. The vendee could not urge that the contract called for a violation of the law, as that plea would have put it out of court at once. And to the argument that the vendor took upon itself the risk of not procuring the license, the court answered that from the nature of the contract and the circumstances in which it was made, the vendor undertook merely to do what in its power lay to procure the license. It would serve no purpose to discuss the English case further than to show its non-applicability

to the situation here. The contract there called for a shipment that the government would not permit to be made. The agreement of the vendor to ship to Vladivostok was an essential term of the contract. In the case at bar the contract called for delivery alongside steamer at New York. No implication can possibly be imported into the contract, in order to give it " business efficacy," that the plaintiffs should assume any risk dependent upon the defendant's ability to procure an export license, as it is quite clear that they had no duty whatsoever to perform in relation to the license, and it follows that any loss suffered by the defendant because of its failure to procure the license, must be borne wholly by itself.

Judgment reversed and new trial ordered, with thirty dollars costs to appellant to abide the event.

Guy and Bijur, JJ., concur.

Judgment reversed and new trial ordered, with costs to appellant to abide event.